Phyllis Ann STERNLIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 51402.

Court of Criminal Appeals of Texas.

Sept. 15, 1976.

Richard C. Milstead, Big Spring, on appeal only, for appellant.

Tim Curry, Dist. Atty. and Marvin Collins, Asst. Dist. Atty., Fort Worth, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; the punishment is imprisonment for 10 years.

The appellant complains of (1) the court's charge on self-defense, (2) the admission in evidence of bloody photographs of the deceased's body, (3) the prosecutor's alleged improper interrogation of a character witness, and (4) the court's refusal of a mistrial after the prosecutor asked a question alleged to be improper.

The appellant's complaint about the court's charge concerns the law of self-defense under V.T.C.A. Penal Code, sec. 9.31 and Sec. 9.32, which in pertinent part provide:

"Sec. 9.31

"(a) . . . a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."

"Sec. 9.32. A person is justified in using deadly force against another:

"(1) if he would be justified in using force, against the other under Section 9.31 of this code;

"(2) if a reasonable person in the actor's situation would not have retreated; and

"(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

"(A) to protect himself against the other's use or attempted use of unlawful deadly force; . . . ".

It is asserted that the charge on self-defense was erroneous because it failed to instruct the jury that the statutory duty to retreat was necessary only if she had the ability and opportunity to retreat. It is also asserted that the charge submitted to the jury was a comment on the weight of the evidence because it was assumed the appellant had the ability and opportunity to retreat. An objection to the charge was made at the time of trial, and the error, if any, was properly preserved.

One of the most drastic changes made in the new penal code is that before deadly force may be used in self-defense the actor (defendant) is required to retreat if a reasonable person in the actor's (defendant's) situation would have retreated. V.T.C.A. Penal Code, Sec. 9.32(2). A brief consideration of the history of the doctrine of retreat is in order.

Retreat was not necessary to the right of self-defense in this state prior to the new penal code which became effective January 1, 1974. In fact, the statute provided it was not necessary to retreat. See Article 1225, V.A.P.C. (1925). See *Cooper v. State,* 49 Tex.Cr. 28, 89 S.W. 1068 (1905); *Renn v. State,* 64 Tex.Cr. 639, 143 S.W. 167 (1912); *Prater v. State,* 142 Tex.Cr. 626, 155 S.W.2d 934 (1941); *Lopez v. State,* 152 Tex.Cr. 562, 216 S.W.2d 183 (Tex.Cr.App.1948).

The charge in *Renn v. State,* supra, was:

"In this connection, you are instructed that one who is unlawfully attacked is not bound to retreat, in order to avoid the necessity of killing his assailant, but has the right to stand his ground, and even to advance on his adversary, and continue to

act in self-defense until the danger or apparent danger is past, and to repel the unlawful attack of his assailant with whatever force may reasonably appear to him at the time to be necessary; but when it appears to defendant that such danger or apparent danger, if any, ceases, then such right ceases."

The provision of the new penal code that we are considering, which departs from our former law, is a codification of the old common law. Mr. Justice Oliver Wendell Holmes in the opinion he authored in *Brown v. United States,* 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961; 18 A.L.R. 1276 (1921), said the doctrine of retreat had ossified into a specific rule without much regard for reason. In *Brown v. United States,* supra, a murder case which occurred in Texas and of which the federal courts had jurisdiction, it was said:

" . . . Many respectable writers agree that if a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not exceeded the bounds of lawful self defence. That has been the decision of this Court. *Beard v. United States,* 158 U.S. 550, 559, 15 Sup.Ct. 962, 39 L.Ed. 1086 [1090, 9 Am. Crim.Rep. 324]. Detached reflection cannot be demanded in the presence of an uplifted knife. Therefore in this Court, at least, it is not a condition of immunity that one in that situation should pause to consider whether a reasonable man might not think it possible to fly with safety or to disable his assailant rather than to kill him. *Rowe v. United States,* 164 U.S. 546, 558, 17 Sup.Ct. 172, 51 L.Ed. 547 [551]. The law of Texas very strongly adopts these views as is shown by many cases, of which it is enough to cite two. *Cooper v. State,* 49 Tex.Cr. 28, 38, 89 S.W. 1068. *Baltrip v. State,* 30 Tex.App. 545, 549, 17 S.W. 1106."

The common law doctrine of "retreat to the wall" or "retreat to the ditch" was first recognized before the use of guns when the weapons used were fists, sticks and knives.

The doctrine is discussed at length in textual material. See Anderson, Wharton's Criminal Law and Procedure (1957), Sec. 235, et seq.; 40 C.J.S. 1010 Homicide § 127, et seq.; 40 Am.Jur.2d 449, Homicide, Sec. 162, et seq.

In this case the court charged the jury that:

"Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

."A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in defendant's situation would not have retreated."

■ We have decided that the instruction on the law of retreat drafted in the language of the statute is sufficient. This may place a heavy burden on the word "situation," but it is a word the meaning of which is generally understood. "Situation" means a combination of circumstances at a given moment. The instruction given required the jury in deciding the issue on self-defense to determine whether the appellant had the ability and opportunity to retreat considered as a part of all of the circumstances of the moment. See and compare, State Bar of Texas, Texas Criminal Pattern Jury Charges (1975), Sec. 9.32; Morrison and Blackwell, New Texas Penal Code Forms, p. 110, Sec. C 9.32A., 1 Branch's 3rd ed. 344, Sec. 9.32.

Next, the appellant says that gruesome, bloody photographs of the deceased's body were erroneously admitted in evidence, because they were merely repetitious of the medical examiner's testimony, they did not help resolve any disputed issue, and they were offered solely to inflame the jury.

■ If a verbal description of the body and the scene of the offense is admissible, photographs depicting the same are also admissible. See e.g., *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972); *Knoppa v. State,* 505 S.W.2d 802 (Tex.Cr.App.1974); *Provost v. State,* 514 S.W.2d 269 (Tex.Cr.App.1974); *Bailey v. State,* 532 S.W.2d 316 (Tex.Cr.App.1976). We hold the photographs depicting the body and the scene of the offense were properly admitted in evidence.

■ The appellant also contends that the trial court erred in permitting the prosecutor, over proper objection, to inquire of appellant's reputation witness of a specific act of misconduct in such a manner as to imply that the alleged act was true. This is the question propounded by the prosecutor of which complaint is made:

"Mr. Cunningham, have you heard that the defendant in this case was arrested for attempted murder back in the early part of 1973?"

This question was properly framed and a witness attesting to the good reputation of the accused may be asked on cross-examination whether he has heard of acts of the accused inconsistent with that good reputation to test the witness's knowledge, if the prosecutor asks the question in good faith believing it has some basis in fact. See *King v. State,* 491 S.W.2d 132 (Tex.Cr.App.1973); *Gaines v. State,* 481 S.W.2d 835 (Tex.Cr.App.1972).

The appellant contends finally that the prosecutor's asking of a question, although not answered, was reversible error. After the court had sustained an objection, a question was asked that was calculated to elicit the same evidence as the earlier question to which the objection had been sustained.

A witness who had been with the appellant immediately preceding the killing testified she followed the appellant from a lounge onto the parking lot. There she heard the appellant say to the deceased, "Here, take this." The witness then saw the appellant shoot the deceased. She testified the deceased stopped walking, said nothing, did not hit the appellant, and raised his hand one time after the appellant had started shooting at him.

■ At a noon recess during the trial in the presence of the prosecutor, the appellant's trial counsel talked with the witness before she testified. She did not tell the attorney she had followed the appellant onto the lot and saw the appellant shoot the deceased. She told defense counsel she had remained inside the lounge and did not see the appellant shoot the deceased. On the witness stand the witness admitted she had not told appellant's counsel the truth. On redirect examination the prosecutor asked the witness why she had not told the appellant's counsel the truth. The witness said she was afraid. An objection was sustained. Thereafter, the prosecutor asked, "Well, Gladys, as a matter of fact, state whether or not you were afraid of Phyllis [appellant]?" Before an objection was made, the court instructed the jury to disregard the question. The court then removed the jury and severely admonished the prosecutor for asking the question. The error, if any, was cured by the court's prompt action. See *Fuller v. State,* 501 S.W.2d 112 (Tex.Cr.App.1973); *Ortiz v. State,* 490 S.W.2d 594 (Tex.Cr.App.1973).

■ Moreover, the State may well have been entitled to have the question answered. An impeached witness is generally entitled to explain a contradictory statement. See *Williams v. State,* 88 Tex.Cr. 87, 225 S.W. 177 (1920); *Denmark v. State,* 95 Tex.Cr. 413, 254 S.W. 954 (1923); *Ayres v. State,* 105 Tex.Cr. 15, 284 S.W. 960 (1926); *Kitchen v. State,* 101 Tex.Cr. 439, 276 S.W. 252 (1925).

The judgment is affirmed.

Opinion approved by the Court.