Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





# MEMORANDUM OPINION

No. 04-10-00419-CR

David William **DILL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A09451
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:       Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:  August 17, 2011

AFFIRMED

David William Dill appeals the trial court's judgment of conviction on one count of injury to a child. Dill contends the trial court committed error in the jury charge, the statutes defining the offense of injury to a child and the parent-child defense are unconstitutional, and trial counsel rendered ineffective assistance. We affirm the trial court's judgment.

## BACKGROUND

This case arises out of injury to D.B.,[1] Dill's eleven year-old son. According to the statement Dill provided police, Dill was attempting to discipline D.B. because the child violated Dill's rules by playing a video game and using an air conditioner without first obtaining permission. Dill admitted he used a piece of fence wire, approximately three feet in length and twisted to form a loop, to strike D.B. about the buttocks and the upper part of his legs. Dill estimated he struck D.B. about fifteen times with the wire. Dill also admitted he used duct tape to cover D.B.'s mouth and bind his hands and feet during part of the time that he was "beating" D.B. Dill told the investigator that D.B. was screaming while he was being hit with the wire and Dill wanted to silence his screams. Dill also explained that D.B. resisted being struck by using his hands and feet to cover his buttocks. Dill stated he decided to bind D.B.'s hands and feet so as to have a clearer path to strike him on the buttocks. After binding D.B.'s hands and feet, Dill lifted him by the feet and struck him with the wire. During the interview with police, Dill admitted this episode was the "worst beating" he had ever administered to D.B. and that the "discipline" was unreasonable. Dill also stated he had intended to make the discipline painful so it would be effective.

Brad Harvey, an assistant principal at D.B.'s elementary school, testified that the day after the beating D.B. told him about what Dill had done. Harvey noticed bruises on D.B.'s legs and notified the proper authorities. Mark Bartel, a criminal investigator for the Kerr County Sheriff's Office, testified he went to Dill's residence to investigate the complaint. Investigator Bartel told the jury Dill and his wife cooperated and talked with them about the allegations. Dill admitted he used duct tape to cover D.B.'s mouth and to bind his hands and feet. Dill went to a

---

[1]We will refer to the complainant by his initials.

trash can and retrieved several pieces of tape. One piece appeared to contain several strands of hair stuck on the tape.

A jury found Dill guilty of intentionally or knowingly causing bodily injury to D.B. The trial court sentenced him to four years in prison. This appeal followed.

## CHARGE ERROR

Dill first contends the trial court committed charge error by failing to limit the instruction on the *mens rea* to the result of the conduct. The charge given authorized the jury to convict if it found Dill engaged in the conduct with the requisite mental state. "Injury to a child is a result-oriented offense requiring a mental state that relates not to the specific conduct but to the result of that conduct." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); s*ee also Alvarado v. State*, 704 S.W.2d 36, 39-40 (Tex. Crim. App. 1985) (holding trial court erred in injury to child case by not limiting the charge on the *mens rea* to the result of the conduct). Dill also asserts the trial court erred by failing to include an instruction on the parent-child defense[2] in the application paragraph. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (holding trial court committed charge error when it *sua sponte* included abstract defensive instruction in jury charge but failed to include instruction in application paragraph). The State concedes there was charge error, but argues Dill failed to show he suffered egregious harm as a result of the errors.

Dill did not object to the jury charge or request any additional instructions. Accordingly, we review the record to determine whether Dill suffered egregious harm. *See Almanza v. State*,

---

[2]Section 22.04 of the Texas Penal Code provides a person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act causes bodily injury to a child. *See* TEX. PENAL CODE ANN. § 22.04(a)(3) (West 2011). The parent-child defense is found in section 9.61 of the Penal Code, and provides in relevant part that a parent's use of non-deadly force against a child younger than 18 years is justified "when and to the degree the actor reasonably believes the force is necessary to discipline the child or to safeguard or promote his welfare." *See* TEX. PENAL CODE ANN. § 9.61(a) (West 2011).

686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm occurs if the error "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). To determine if egregious harm exists, we look to "the entirety of the jury charge itself, the evidence, including the contested issues and the weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.*

The error in instructing on the *mens rea* allowed the jury to convict Dill if it found he intentionally or knowingly engaged in the conduct, rather than intending the result. However, the only contested issue at trial was whether Dill's conduct was excused by the parent-child defense of reasonable discipline. Dill admitted he intended to cause pain, as that was the purpose of imposing punishment. Because Dill admitted he intended to cause pain, but was doing so while imposing reasonable discipline, there is little likelihood the conviction was based on the improper *mens rea* instruction. Furthermore, although the State made a passing reference to the "engage in the conduct" instruction during final argument, the argument focused primarily on whether the evidence supported Dill's claim that he used reasonable force to discipline D.B. After reviewing the record, we hold Dill did not suffer egregious harm due to the charge error relating to the *mens rea* instruction.

The issue of whether Dill suffered egregious harm due to the trial court's failure to include the parent-child defense in the application paragraph is more troublesome. Although the trial court generally instructed the jury about the defense, the jury was not informed at any time that the State had the burden to prove beyond a reasonable doubt that Dill's actions did not come within the defense. That is, the jury was never told that if it had a reasonable doubt whether the discipline was reasonable (i.e., reasonably necessary to discipline the child or promote or

safeguard his welfare), it should return a not guilty verdict. However, after reviewing the record in light of the *Stuhler* factors, we conclude Dill did not suffer egregious harm. During final argument, both sides referred to the defensive abstract instruction and argued its effect to the jury. At one point, the prosecutor conceded that if the beating with the wire was reasonable discipline, "then it doesn't matter if he intended to cause the pain," indicating to the jury that in such event Dill should be found not guilty. Although the jury was not informed about the State's burden of proof on the defensive issue, there was little if any evidence upon which a rational jury could have concluded Dill's conduct was reasonable discipline. As argued by the State in its closing argument, one could hardly agree that lashing a child at least fifteen times with fence wire, while the child was bound by his hands and feet for at least part of the time, and using duct tape to muffle the child's screams, was reasonable discipline to punish the child for failing to take out the garbage and for using an air conditioner and a video game without permission. Dill even admitted in his statement that upon reflection, the discipline was not reasonable. We overrule Dill's point of error concerning the jury charge.

CONSTITUTIONALITY OF STATUTES

Dill contends Texas Penal Code Sections 22.04 and 9.61 are unconstitutionally vague and overbroad and violate the equal protection clauses of the state and federal constitutions. Because Dill fails to separately argue how the Texas Constitution affords greater protection in this case than the United States Constitution, we will analyze his arguments under the federal constitution only. *See Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992), *cert. denied,* 510 U.S. 852 (1993).

Dill contends section 22.04 of the Texas Penal Code, which defines the offense of injury to a child, and section 9.61 of the Texas Penal Code, which permits a parent to use non-deadly

force when reasonably necessary to discipline the child or promote his welfare, are unconstitutional because they fail to provide adequate notice of what conduct is unlawful. Gill asserts that section 9.61 does not incorporate a reasonable person standard, but rather allows each actor to decide what is reasonable. He argues the statutes therefore do not provide a standard to govern a parent's conduct and they authorize ad hoc and subjective enforcement by the police, judges, and juries. We disagree.

The "reasonably believes" language in section 9.61 creates an objective standard rather than a subjective standard. "'The use of force under section 9.61 is not justified simply because of a parent's subjective belief that the force is necessary; rather, the use of force is justified only if a reasonable person would have believed the force was necessary to discipline the child or to safeguard or promote the child's welfare.'" *Quattrocchi v. State*, 173 S.W.3d 120, 122 (Tex. App.—Fort Worth 2005, pet. ref'd) (quoting *Assiter v. State*, 58 S.W.3d 743, 748 (Tex. App.—Amarillo 2000, no pet.)). Texas courts have held the reasonable person standard constitutional in the face of challenges for vagueness. *See State v. Holcombe*, 187 S.W.3d 496, 499-500 (Tex. Crim. App.), *cert. denied*, 549 U.S. 825 (2006) (holding noise ordinance utilizing a reasonable person standard not unconstitutionally vague); *Bartmess v. State*, 708 S.W.2d 905, 909 (Tex. App.—Tyler 1986, no pet.) (holding self-defense statute requiring jury to determine whether a reasonable person would have retreated not void for vagueness); *c.f. Long v. State*, 931 S.W.2d 285, 289-90 (Tex. Crim. App. 1996) (finding part of harassment statute unconstitutional for vagueness due in part for failure to contain a "reasonable person" or objective standard). Because section 9.61 incorporates a reasonable person standard, it is not void for vagueness.

Dill next asserts the statutes violate the equal protection clause of the Fourteenth Amendment because parents in different locales could be subjected to different treatment based

on different determinations by police or juries of what constitutes reasonable force under the reasonable person standard. We again disagree. A law that does not burden a fundamental right or target a suspect class will be upheld against an equal protection challenge if it bears a rational relation to some legitimate end. *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see In re Shaw*, 204 S.W.3d 9, 17 (Tex. App.—Texarkana 2006, pet. ref'd). Dill does not claim the statutes create a suspect class or interfere with a fundamental right. Nor does he argue that the statutes are unrelated to a legitimate state interest. His only complaint is that law enforcement and juries in different locales may reach different conclusions as to the same conduct. But "the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). We overrule Dill's equal protection challenge.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, Dill contends his counsel rendered ineffective assistance because he failed to object to the jury charge[3] and failed to object to "the State's closing argument emphasizing the jury charge error." Dill does not point us to any place in the record where the State "emphasized" the charge error. However, at the beginning of its jury argument, the State read the definition of "intentionally" as provided in the charge and argued:

> Did he intend to engage in the conduct of beating [D.B.] with the wire or was that an accident. No, he clearly intended that. That's what the wire was for. He intended to engage in the conduct of beating [D.B.] with the wire.
>
> "Or cause the result," did he intend to cause the result, the pain? Absolutely. Most of the time that's what the purpose of discipline is, not always physical pain, but obviously many times, at least corporal punishment, that's usually the intent, and he [sic] during his interview had said, "Well, you know, it

---

[3] Dill limits his argument to trial counsel's failure to object to the *mens rea* instruction. He does not complain about counsel's failure to object to the absence of an instruction on the parent-child defense in the application paragraph of the charge.

has to cause pain if it's going to have any type of effect," and I'm not quoting him directly, but clearly that was his intent, to cause pain.

. . .

[T]hen you would go on to determine whether or not the Defendant knowingly caused the pain or act. And that definition is "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his conduct," in this particular case causing the pain, "when he is aware that his conduct is reasonably certain to cause the result." Clearly not only was the Defendant aware that his conduct was reasonably certain to cause the result, the pain, you strike somebody with a wire to the degree he did, clearly it's going to cause pain, but he intended to cause pain.

These were the only references to intentionally or knowingly engaging in the conduct that were made during the State's final argument.

To establish ineffective assistance of counsel, a defendant must prove by a preponderance of evidence his trial counsel's performance was deficient and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To demonstrate deficient performance, the defendant must show counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Our review of defense counsel's representation is "highly deferential" and we presume "counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record contains no evidence of counsel's reasons for the challenged conduct, we "'will

assume a strategic motivation if any can possibly be imagined, and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.'" *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003) (quoting 3 W. LaFave, *et al.*, CRIMINAL PROCEDURE §11.10(c) (2d ed. 1999)).

A defendant claiming ineffective assistance of counsel must also establish prejudice by showing "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to prove either deficient performance or prejudice is fatal to any complaint of ineffective assistance. *Strickland*, 466 U.S. at 700.

Because his trial counsel has not had the opportunity to explain his actions, Dill has the burden to demonstrate that no competent counsel would have engaged in such conduct. *See Garcia*, 57 S.W.3d at 440. We conclude that trial counsel's failure to object to the State's closing argument is not so outrageous that no competent counsel would have failed to object. The State's comment about engaging in the conduct was made in passing and not dwelled upon. The main thrust of the argument quoted above was to point out that Dill intended to cause the result.

With respect to trial counsel's failure to object to the *mens rea* instruction, Dill has failed to demonstrate that but for this failure, the result of the proceeding would have been different. During summation, both parties focused their argument on whether the force used by Dill was justified under the parent-child defense. As previously discussed, Dill admitted his intent was to inflict pain and therefore there is little chance the jury convicted him based on "engaging in the

conduct" rather than on intending the result of his conduct.  Based on the record before us, Dill

failed to prove by a preponderance of the evidence the prejudice prong of the *Strickland* test.

## CONCLUSION

The judgment of the trial court is affirmed.


Steven C. Hilbig, Justice

Do not publish